# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4873 | **DATE** | 4/10/2003 |
| **CASE TITLE** | Brown vs. Clark, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment is granted in part and denied in part [60-1]. McDowell's motion for summary judgment is granted. Currie's motion for summary judgment on the excessive force claim is denied. Currie's motion for summary judgment on the Due Process claim is granted. Clark's motion for summary judgment on the failure to give medical care claim and Due Process claim are both granted. The case is set for trial on May 12, 2003. In the meantime, the remaining parties are directed to meet in a sincere effort to resolve this case short of trial.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | APR 11 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | 4/10/2003 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| MD | courtroom deputy's initials | | MD | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

JERAMEY BROWN,                          )
                                        )
        Plaintiff,                      )
                                        )
        vs.                             )       No. 00 C 4873
                                        )       Judge Joan H. Lefkow
DWAYNE CLARK, GILBERTO ROMERO,          )
GLENN JOHNSON, JOHN BANDA,              )
ALEX NUNN III, SAM CURRIE,              )
WILLIAM BROWN, KIM MORGAN,              )
MICHAEL McDOWELL, RALPH                 )
BURKYBILE, DANIEL JUNKER,               )
                                        )
        Defendants.                     )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jeramey Brown ("Brown"), brings this action under 42 U.S.C. § 1983 alleging

that defendants,[1] who are various employees of the Illinois Department of Corrections ("IDOC"),

violated his rights under the Eighth Amendment when they used excessive force against him

(Count I) and denied him immediate adequate medical attention for ensuing injuries (Count II).[2]

Before the court is a motion by defendants Michael McDowell ("McDowell"), Sam Currie

("Currie") and Dwayne Clark ("Clark") under Rule 56, Fed. R. Civ. P., for summary judgment.

The court has jurisdiction over the claims pursuant to 42 U.S.C. § 1343(a). For the reasons set

forth below, the court grants the motion in part and denies it in part.

---

[1]Defendants Ardianne Johnson, Chris Cannon, L. Gregory, Leora Harry and Donald Snyder were previously dismissed in this court's August 25, 2000 minute order. The claims against Lamark Carter abated on July 7, 2002 after his death was suggested upon the record.

[2]Brown's Count III claim alleging Due Process violations based on the issuance of false and unjustifiable disciplinary reports and punishments was dismissed by this court in its August 25, 2000 minute order.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

Prior to and on August 7, 1998, Brown was incarcerated by IDOC at the Joliet Correctional Center ("Joliet"). (Def. L.R. 56.1 ¶ 1.) McDowell was a correctional officer assigned to the North Segregation unit where Brown was housed. (Def. L.R. 56.1 ¶ 3.) Currie was a correctional sergeant also assigned to the North Segregation unit. (Def. L.R. 56.1 ¶ 10.) Clark was the Acting Warden of Stateville Correctional Center ("Stateville"). (Def. L.R. 56.1 ¶

2

16.)

On August 7, 1998, McDowell, based on instruction from Currie, told Brown to pack his belongings because he was going to be transferred from cell 218 to cell 219, which was occupied by Inmate Charles Byrd. (Pl. Resp. to Def. L.R. 56.1 ¶ 4.) After being informed by McDowell that he would be moved, Brown responded that he did not want to move, although he did not state with particularity the reasons why. (Def. L.R. 56.1 ¶¶ 5-6.) McDowell advised Currie that Brown did not wish to be moved. (Def. L.R. 56.1 ¶ 7.) McDowell never consulted a Double Celling Form, DCA 12.254 ("Double Celling Form") to determine whether he was acting pursuant to a proper, lawful order. (Pl. Resp. to Def. L.R. 56.1 ¶ 6.)

Currie gave Brown a direct order to move his things. (Def. L.R. 56.1 ¶ 12.) Currie never consulted the Double Celling Form. Afterward, a higher-ranking staff member came and gave Brown another direct order to move his things. (*Id.*) Thereafter, members of a tactical team forcibly "extracted" Brown from his cell. At some point before the unit extracted Brown from his cell, McDowell went downstairs to the first floor. Although not present, McDowell heard the "commotion" caused by the extraction as it was happening. (Pl. Resp. to Def. L.R. 56.1 ¶ 9.) McDowell did nothing to stop the tactical team in its extraction of Brown. (*Id.*) Currie did not take part in the cell extraction but was apparently present. (Def. L.R. 56.1 ¶ 13; Pl. Resp. to Def. L.R. 56.1 ¶ 13.) The tactical unit used excessive force in removing Brown from his cell, causing him injuries that required medical attention. Immediately after the incident and before being given medical attention for injuries suffered at the hands of the tactical unit, Brown was transferred to Stateville.

Clark, as Acting Warden at Stateville, had no authority to decide who was transferred to

3

Stateville. (Def. L.R. 56.1 ¶ 17.) Instead, transfer packages were generated by a counselor at the sending institution, and were subjected to review by the Assistant Wardens and Warden, before being forwarded to the Transfer Coordinator's office. (Def. L.R. 56.1 ¶ 18.) The Transfer Coordinator's office makes the final determination as to where an inmate is transferred. (*Id.*) Clark has no recollection of Brown or of the incidents giving rise to the allegations of this action. (Def. L.R. 56.1 ¶ 19.)

## DISCUSSION

Brown accuses McDowell and Currie of excessive force and Clark of denying him immediate, adequate medical care. Brown also attempts to advance Due Process violations against Currie and Clark on the basis that, with a motive to cover up the incident, they pressed disciplinary charges against him despite knowing that Brown had not committed any infractions. McDowell, Currie and Clark move for summary judgment on the claims against them on grounds that they were not personally involved in any of the alleged constitutional violations.

### A. Excessive Force Claims Against McDowell and Currie

In order to prevail on a § 1983 claim,[3] a plaintiff must establish that the defendant deprived him of a constitutional or federal right and that the defendant acted under color of law. *Brokaw* v. *Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000). For claims against an

---

[3]Section 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

4

individual under § 1983, a plaintiff must show evidence that the defendant was personally involved in the alleged constitutional deprivation. *Vance* v. *Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996); *Sheik-Abdi* v. *McCleellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). The test for establishing personal liability was set forth in *Vance*,

> [A]n official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . . In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery.

*Vance*, 97 F.3d at 993 (internal citations and quotations omitted).

Excessive force under the Eighth Amendment is the "unnecessary and wanton infliction of pain" on prisoners. *Hudson* v. *McMillian*, 503 U.S. 1, 5 (1992); *Outlaw* v. *Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The "core judicial inquiry" in determining whether excessive force was used is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

McDowell and Currie contend that regardless of the level of force used on Brown, they were not personally involved and cannot be responsible for any of the alleged deprivations of Brown's constitutional rights. McDowell rests on undisputed evidence that his only involvement in the extraction of Brown from his cell was telling Brown to pack his things because he was moving to another cell. McDowell left the scene before the alleged assault occurred, although he apparently was close enough to hear the commotion. Similarly, Currie insists that he was not a

5

member of the tactical team and only told Brown to pack his things. While not entirely clear, it appears that Currie was present at or near Brown's cell when the extraction occurred.

In response, Brown argues that McDowell and Currie acted without the necessary authority required to permit the transfer of Brown into cell 219, in that neither had done the necessary review of the appropriate materials or had insisted on seeing a completed Double Celling Form before proceeding to tell Brown that he would be moved. Whatever may be said of McDowell and Currie's actions in transferring Brown, however, such actions are not cruel and unusual punishment under the Eighth Amendment. Even if McDowell and Currie acted without authority in ordering Brown to get ready to move, the orders in and of themselves were neither cruel nor unusual nor punishment, and it is not a Constitutional violation.

The issue remains, however, whether either McDowell or Currie was otherwise personally involved in the alleged excessive force. McDowell was not present but merely heard something going on. Because there is no genuine issue of material fact that McDowell was not aware of the force being used, or that he facilitated, approved, condoned, or turned a blind eye to it, the court concludes that McDowell lacked the personal involvement necessary to be held liable. (Although McDowell may have overhead the commotion, there is insufficient evidence to suggest that he realized excessive force was being used. Certainly, Brown cites no case where a defendant who was not actually present at the scene of excessive force has been found to have turned a blind eye.)

As for Currie, an issue of fact exists as to whether he may have turned a blind eye to the

6

violence.[4] Currie testified in his deposition that he could see Brown inside his cell (Currie dep. at 51) and that he saw the events that took place within Brown's cell, including that he never saw anyone beat Brown with batons or stomp on Brown's chest. (*Id.*) Because Currie was apparently present outside of Brown's cell and could see the events that took place, the court cannot say there is no dispute of fact concerning whether he lacked personal involvement by condoning the actions of the extractors. Indeed, in his deposition Currie testified that if he had seen someone hitting Brown with batons or stomping on him, he would have alerted a higher ranking member in the unit. (Currie dep. at 51.) Because genuine issues of material fact exist as to whether Currie was personally involved, his motion for summary judgment is denied.

## B.     Denial of Immediate Adequate Medical Attention Against Clark

Brown directs his denial of immediate adequate medical attention claim against Clark. Under the Eighth Amendment, prison officials are prohibited from "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Zentmyer* v. *Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000), quoting *Estelle* v. *Gamble*, 429 U.S. 97, 104-05 (1976). Liability results when the defendants exhibit "deliberate indifference to serious medical needs." *Id.*, quoting *Estelle*, 429 U.S. at 104.

Clark maintains that he was not personally involved in any of the decisions concerning Brown. Brown has produced no evidence that Clark knew of his need for medical care or was otherwise deliberately indifferent. Indeed, in response to Clark's motion for summary judgment, Brown's argument consists of the following statement: "[T]hrough Clark's acquiescence to

---

[4]Currie argues that he was not present when the cell extraction occurred. (Def. L.R. 56.1 ¶ 11.) Brown, however, disputes this fact and points to sections of Currie's deposition that create an issue of fact as to whether Currie was present. (Pl. Resp. to Def. L.R. 56.1 ¶ 11.)

accepting the transfer of Plaintiff to Stateville, Clark necessarily violated Plaintiff's constitutional rights regarding failure to provide medical treatment with his knowledge or consent." (Pl. Resp. at 8.) Brown does not present evidence that would permit an inference of deliberate indifference, however. The best Brown can offer is Clark's lack of recollection giving rise to the incidents of the Complaint. This is insufficient to establish a genuine issue of material fact at the threshold because he cannot even establish Clark's awareness of his need for medical care. *See Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002), *and cases cited therein* ("[A] prison official may be found liable only if he 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"). Brown's lack of any evidence concerning Clark is in fact so profound he was "unable to respond" to any portion of defendants' statement of material facts that pertained to Clark, thereby causing those facts to be admitted. *See* Local Rule 56(b)(3)(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). As such, the court grants Clark's motion for summary judgment on this claim.

## C. Due Process Violations/Issuance of False and Unjustifiable Disciplinary Reports and Punishments

Finally, Brown attempts to resurrect against Clark and Currie Due Process claims dismissed long ago against five other defendants. On August 25, 2000, when this case was assigned to the Honorable James F. Holderman, Brown's Due Process claims for the alleged issuance of false and unjustifiable disciplinary reports and punishments were dismissed. As

8

Judge Holderman noted,

> Plaintiff Jeramey Brown has brought this pro se action pursuant to 42 U.S.C. §
> 1983 alleging various employees of the Illinois Department of Corrections used
> excessive force against him, denied him adequate medical care, and violated due
> process rights by wrongfully finding him guilty of various disciplinary charges
> and revoking his good time credits as a result. While plaintiff's allegations
> concerning the use of excessive force and subsequent denial of adequate medical
> treatment state a colorable claim, his allegations against the defendant[s]
> concerning the invalid disciplinary hearing must be dismissed. The Supreme
> Court held in *Heck* v. *Humphrey*, 512 U.S. 477, 487 (1994), that [a] prisoner
> cannot bring an action under § 1983 challenging the validity of his conviction or
> confinement until [he] has shown the conviction was reversed, declared invalid or
> impunged by a writ of habeas corpus. The court extended its ruling and rationale
> in *Heck* to prison disciplinary cases in *Edwards* v. *Balisok*, 117 S.Ct. 1584 (1997).
> The *Balisok* court held that an inmate's challenge to the prison['s] failure to
> follow the required due process requirement in the disciplinary context is not
> cognizable when it would affect the validity of the hearing and the punishment
> imposed. *Balisok* at 1589. Brown's allegations that Johnson, Cannon, [and]
> Gregory denied him access to witnesses and failed to satisfy procedural safeguards
> implicates the validity of his disciplinary hearing. The same rationale applies to
> defendants [H]arry and Snyder who allegedly participated in a coverup depriving
> plaintiff of his good time. Before bringing a Section 1983 claim[] concerning the
> invalidity of his disciplinary hearing, Brown must show that the hearing was
> invalidated by a writ of habeas corpus or its concomitant state court remedies.
> Therefore the court dismisses Adrianne Johnson, Chris Cannon, L. Gregory, Leora
> Harry, and Donald Snyder as defendants in this action.

Aug. 25, 2000 Minute Order (Docket # 6).

Brown, either unaware of the August 25 minute order or believing that it does not apply

to Currie and Clark, argues that questions of fact remain as to the issue of whether the

unjustifiable disciplinary reports prepared were in violation of Brown's due process rights.

Clearly, however, Judge Holderman's August 25 minute order addressed these claims.

Presumably the only reason Clark and Currie were not dismissed from the action then is because

of other claims still pending against them. Clark is not even named in Claim Three of Brown's

Complaint alleging Due Process violations. Brown alleges that Currie filed a false disciplinary

9

report that resulted, inter alia, in loss of three months "good conduct credits." As Judge Holderman pointed out with respect to the dismissed defendants, Brown may not challenge the procedures that resulted in the loss of good time until he has established via a writ of habeas corpus that the credits were wrongly removed.[5] This principle forecloses Brown's claim against Currie (and Clark) on the same basis as against the already dismissed defendants. As such, summary judgment is granted in favor of Currie and Clark on this claim.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part [#60]. McDowell's motion for summary judgment is granted. Currie's motion for summary judgment on the excessive force claim is denied. Currie's motion for summary judgment on the Due Process claim is granted. Clark's motion for summary judgment on the failure to give medical care claim and Due Process claim are both granted. This case is set for trial on May 12, 2003. In the meantime, the remaining parties are directed to meet in a sincere effort to resolve this case short of trial.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: April 10, 2003

---

[5]Actually, in Illinois mandamus rather than habeas corpus may be the appropriate writ. *See Guzzo* v. *Snyder*, 326 Ill. App. 3d 1058,1064, 762 N.E. 2d 663, 669, 261 Ill. Dec.94, 100 (2001) ("Under *habeas corpus*, the sole remedy is a prisoner's immediate discharge from custody. Because it was necessary for the trial court to order the Director to exercise his discretion and grant [prisoner] good-time credit before releasing him, he was not entitled to *habeas corpus* relief.") (internal citations omitted.)